# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

CASE NO.:

**KATARZYNA JARRETT,**

    *Plaintiff,*

**v.**

**EXPERIAN DATA CORP. d/b/a
EXPERIAN RENTBUREAU,**

    *Defendant,*

_____/

## PLAINTIFF'S COMPLAINT
## JURY DEMAND

1. Plaintiff, Katarzyna Jarrett (hereinafter "Plaintiff" or "Ms. Jarrett") brings this action against Experian Data Corp. d/b/a Experian RentBureau ("RentBureau") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3. Defendant's voluntary contact with Plaintiff in Florida made it foreseeable that it would be hailed into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

4. Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Brevard County, Florida.

## PARTIES

5. Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Brevard County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

6. Defendant RentBureau is and was a "consumer reporting agency" and a "reseller" as provided for under the FCRA. *See* 15 U.S.C. § 1681a(f),(u).

7. Defendant RentBureau is a corporation incorporated under the laws of the State of Delaware and maintains its principal place of business located at 475 Anton Blvd., Costa Mesa, CA 92626.

8. RentBureau engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

9. Specifically, RentBureau sells tenant screening reports to property management companies and landlords for their use in determining prospective tenant's eligibility to rent an apartment or property.

## STATUTORY FRAMEWORK OF THE FAIR CREDIT REPORTING ACT

10. The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.*, was enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

11. Congress found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(3),(4).

12. The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

13. Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies ("CRAs", and also referred to herein as "credit reporting agencies") were under no obligation to treat an identity theft claim any different than a regular dispute.

14. The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required CRAs to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

15. A CRA may decline to "block" information only if the CRA reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of the blocked transaction. *See* 15 U.S.C. § 1681c-2(c)(1). 15. If a block is declined the CRA must then notify the consumer promptly, in the same manner as consumers are notified of the reinsertion of information under § 1681i(a)(5)(B). See 15 U.S.C. §§ 1681c-2(c)(2).

16. In the absence of such a determination of material misrepresentation or error, a CRA cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. *See* 12 C.F.R. § 1022.3(i)(1)(iii)(A).

17. "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." *Osada v. Experian Info. Solutions, Inc.,* No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

18. The FCRA requires that if a consumer disputes any item of information contained in their credit file, the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the

4

file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

19. In performing the reinvestigation, the FCRA requires the CRA to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C.S. § 1681i(a)(4).

20. The FCRA also requires the CRA to provide notification of the dispute to the person who provided any item that is disputed, along with all relevant information received from the consumer regarding the dispute. 15 U.S.C.S. § 1681i(a)(2)(A).

21. The FCRA provides that if the disputed information is inaccurate or incomplete or cannot be verified, the CRA "shall…(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

22. The FCRA requires that each credit reporting agency provides consumers with access to the information sold about them to third parties and also provides consumers with the opportunity to review and dispute any inaccurate information in their consumer files. *See* 15 U.S.C. §§ 1681g(a), 1681i(a).

23. Specifically, each credit reporting agency is required to provide consumers with copies of their consumer files. *See* 15 U.S.C. § 1681g(a).

24. The term "file" when used in connection with information on any consumer, means "all of the information on that consumer recorded and retained by the consumer reporting agency regardless of how that information is stored." *See* 15 U.S.C. § 1681a(g).

25. The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

26. The FCRA requires that if a consumer disputes any item of information contained in their credit file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

27. The FCRA requirements are important, because they help credit reporting agencies ensure that the information in their consumer reports is accurate, they assure that consumers know all the information that is in their files and who has received or requested their reports, and they protect consumer privacy.

28. The FCRA provides a private right of action against any person that violates the provisions of the FCRA. 15 U.S.C. §§ 1681o, 1681n.

29. If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a).

30. If the violation is willful, the consumer may recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a).

31. A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees. 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

## **FACTUAL ALLEGATIONS**

32. Ms. Jarrett is a victim of identity theft.

33. In or around 2022 and 2023, an unknown individual obtained access to Ms. Jarrett's personal identify information, obtained fraudulent government identification cards using her information and began submitting apartment rental applications in her name.

34. Ms. Jarrett has been a homeowner since January 2021 and did not have a need to rent apartments in 2022 or 2023.

35. In or around July 2023, Ms. Jarrett discovered that she was a victim of identity theft, that the identity thief had successfully rented a number of apartments in her name and had been evicted from those apartments for non-payments resulting in Ms. Jarrett being contacted by debt collectors.

36. In an attempt to remedy and prevent further instances of identity theft against her, Ms. Jarrett immediately contacted the West Melbourne Police Department to report the identity theft, completed the Federal Trade Commission ("FTC") Identity Theft Report and requested her credit reports from various consumer reporting agencies including RentBureau.

37. On or about August 24, 2023, Ms. Jarrett requested her consumer report from RentBureau by mailing in the consumer report request form available on its website.

38. Ms. Jarrett did not receive a copy of her consumer report in response to her request.

39. On or about October 13, 2023, Ms. Jarrett mailed a second request form to RentBureau through certified mail.

40. Ms. Jarrett did not receive a copy of her consumer report in response to her second request.

41. On or about January 12, 2024, Ms. Jarrett received investigation results and her consumer report from RentBureau. RentBureau further informed Ms. Jarrett that it had placed an initial 90-day security alert on her consumer file.

42. Upon information and belief, the January 12, 2024 communication from RentBureau was prompted by Ms. Jarrett contacting another consumer reporting agency, RentGrow, Inc., regarding the information it had resold about her from RentBureau.

43. On or about February 2, 2024, Ms. Jarrett mailed a third request form to RentBureau through certified mail.

44. Ms. Jarrett did not receive a copy of her consumer report in response to her third request.

45. On or about March 14, 2024, Ms. Jarrett mailed a dispute letter to RentBureau requesting that RentBureau remove rental screening inquiries appearing on the January 12, 2024 report because the inquiries were fraudulent. Ms. Jarrett provided RentBureau with a copy of her FTC Identity Theft Report and police report.

46. Ms. Jarrett's dispute letter was delivered on March 21, 2024.

47. Ms. Jarrett, however, did not receive a response to her dispute letter from RentBureau.

48. On or about April 5, 2024, Ms. Jarrett mailed a fourth request form to RentBureau through certified mail.

49. Ms. Jarrett did not receive a copy of her consumer report in response to her fourth request.

50. On or about August 22, 2024, Ms. Jarrett mailed a fifth request form to RentBureau through certified mail.

51. On or about September 3, 2024, RentBureau provided Ms. Jarrett with her consumer report.

52. In addition to the inquiries that Ms. Jarrett previously disputed in her March 14, 2024 letter that RentBureau failed to remove, the September 3, 2024

consumer report also included two additional fraudulent inquiries from January 17, 2024 and a fraudulent collection account with Fair Collection and Outsourcing, Inc. ("FCO") for unpaid rent at the Indigo Champions Rdige apartments.

53. On or about September 19, 2024, Ms. Jarrett mailed a second letter to RentBureau requesting that RentBureau remove the fraudulent rental screening inquiries and the FCO collection account. With her dispute letter, Ms. Jarrett provided RentBureau with a photocopy of her driver's license, passport card, FTC Identity Theft Report and police report.

54. Ms. Jarrett's dispute letter was delivered on October 5, 2024.

55. Because Ms. Jarrett did not receive a response to her September 19, 2024 letter, Ms. Jarrett completed and mailed RentBureau's consumer report request form along with a copy of her driver's license and utility bill as proof of address on or about December 13, 2024.

56. Ms. Jarrett's request form was delivered on December 26, 2024.

57. Once again, Ms. Jarrett did not receive a response to her request form from RentBureau.

58. On January 30, 2025, Ms. Jarrett contacted RentBureau via telephone and spoke with Kimberlyn.

59. Ms. Jarrett explained to Kimberlyn that she was a victim of identity theft, had disputed fraudulent information with RentBureau in September 2024 and request a copy of her consumer report in December 2024.

60. Kimberlyn informed Ms. Jarrett that RentBureau does not have any records of Ms. Jarrett's disputes in 2024 or a request for her consumer report after the September 2024 report was provided.

61. Ms. Jarrett confirmed with Kimberlyn that her disputes and consumer report requests were mailed to the correct address.

62. Ms. Jarrett again requested that she be provided with her consumer report which was subsequently mailed to her.

63. Ms. Jarrett's consumer report dated January 30, 2025 still included all of the fraudulent inquiries that Ms. Jarrett had been disputing with RentBureau.

64. Upon information and belief, the fraudulent FCO collection account was removed from Ms. Jarrett's RentBureau report by the furnisher and not by RentBureau in response to her dispute letter.

65. As a result of RentBureau's faulty procedures, it disregarded Ms. Jarrett's March 14, 2024 and September 19, 2024 dispute letters by failing to keep any record of the disputes, failing to investigate the disputes or failing to provide any communication to Ms. Jarrett regarding its refusal to address her disputes in any way.

66. Similarly, as a result of its faulty procedures, RentBureau disregarded Ms. Jarrett's August 24, 2023, October 13, 2023, February 2, 2024, April 5, 2024 and December 13, 2024 requests for her consumer file by failing to keep any record of at least the December 13, 2024 request, failing to provide Ms. Jarrett with her

consumer report or failing to communicate with Ms. Jarrett regarding its refusal to provide her with a copy of her consumer report.

67. As a result, Ms. Jarrett was left unaware that the fraudulent information that she had disputed remained in her consumer file and that RentBureau was continuing to provide her consumer report in connection with fraudulent rental applications.

68. As a result of RentBureau's conduct, Ms. Jarrett has suffered actual damages including emotional distress and lost time and labor.

## COUNT I - VIOLATIONS OF 15 U.S.C. §1681g

69. Plaintiff incorporates by reference paragraphs 1-68 as if fully stated herein.

70. At all times relevant hereto, RentBureau is and was a "consumer reporting agency" as provided for under the FCRA.

71. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

72. During the relevant time frame in 2023 and 2024, RentBureau received Plaintiff's requests for a copy of her consumer report.

73. RentBureau violated 15 U.S.C. § 1681g by failing to provide Plaintiff with all information in her consumer file upon her repeated requests in 2023 and 2024.

12

74. RentBureau's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

75. Alternatively, RentBureau negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against RentBureau in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT II - VIOLATIONS OF 15 U.S.C. §1681b(a)(3)

76. Plaintiff incorporates by reference paragraphs 1-68 as if fully stated herein.

77. At all times relevant hereto, RentBureau is and was a "consumer reporting agency" as provided for under the FCRA.

78. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

79. RentBureau violated 15 U.S.C. § 1681b(a)(3) by providing Plaintiff's consumer reports to persons who were not seeking them in connection with a credit transaction involving Plaintiff on January 17, 2024.

80. RentBureau's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

81. Alternatively, RentBureau negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against RentBureau in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT III - VIOLATIONS OF 15 U.S.C. §1681i

82. Plaintiff incorporates by reference paragraphs 1 – 68 as if fully stated herein.

83. At all times relevant hereto, RentBureau is and was a "consumer reporting agency" as provided for under the FCRA.

84. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

85. During the relevant time frame in 2024, RentBureau received Plaintiff's March and September disputes which requested that the fraudulent information be removed from her credit file.

86. RentBureau violated 15 U.S.C. § 1681i by failing to perform any investigation into Plaintiff's disputes.

87. RentBureau's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

88. Alternatively, RentBureau negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

89. As a result of RentBureau's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information remaining in her consumer file, time spent dealing with consumer report disputes, and expenses associated with consumer report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against RentBureau in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT IV - VIOLATIONS OF 15 U.S.C. §1681e(b)

90. Plaintiff incorporates by reference paragraphs 1 – 68 as if fully stated herein.

91. At all times relevant hereto, RentBureau is and was a "consumer reporting agency" as provided for under the FCRA.

92. At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

93. RentBureau violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report and consumer files it publishes and maintains concerning the Plaintiff.

94. After Plaintiff's March and September disputes, RentBureau was placed on notice that it was reporting fraudulent information about Plaintiff, yet RentBureau continues to include the fraudulent information in Plaintiff's consumer file.

95. RentBureau's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

96. In the alternative, RentBureau negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

97. As a result of RentBureau's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information remaining in her consumer file, time spent dealing with consumer report disputes, and expenses associated with consumer report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against RentBureau in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

98. Plaintiff demands a trial by jury on all issues so triable.

Dated: February 25, 2025    *Respectfully submitted,*

**SHARMIN & SHARMIN, P.A.**

*/s/ Eiman Sharmin*
Eiman Sharmin, Esq.
eiman@sharminlaw.com
FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Fax: (844) 921-1022
*Attorneys for Plaintiff*